**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CARLEEN COULTER, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>*v.*<br><br>HUDSON GROUP (HG) RETAIL, LLC, D/B/A HUDSON NONSTOP and DUFRY AMERICA, LLC<br><br>        Defendants. | Case No. 1:23-cv-16176<br><br>Hon. LaShonda A. Hunt |

**RESPONSE IN OPPOSITION TO HUDSON'S MOTION TO DISMISS**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     PLAINTIFF'S ALLEGATIONS ................................................................................ 2

III.    LEGAL STANDARD ............................................................................................. 3

IV.    ARGUMENT ....................................................................................................... 4

      A.    Hudson is a retail tenant, not a government contractor, subcontractor, or legal partner "working for" the City and is thus not exempt from BIPA ............... 4

      B.    Hudson violates BIPA by operating JWO at its airport stores in Illinois. ..... 10

            1.    Plaintiff's Complaint states a claim under § 15(a) of BIPA: Hudson lacks a publicly available retention and deletion policy. ................... 10

            2.    Plaintiff's Complaint states a claim under § 15(b) of BIPA: Hudson never obtained her written informed consent before collecting biometric data. .............................................................................. 11

            3.    Plaintiff's Complaint states a claim under § 15(c) of BIPA: Hudson profited from her biometric data .................................................... 11

            4.    Plaintiff's Complaint states a claim under § 15(d): Hudson disclosed biometric data without her written informed consent. ..................... 12

      C.    Hudson's Unsubstantiated and Untested Technological Claims Must Be Rejected. ............................................................................................. 13

V.      CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Arreola v. Godinez,*
　　546 F.3d 788 (7th Cir. 2008) ........................................................................ 9

*Ashcroft v. Iqbal,*
　　556 U.S. 662 (2009)..................................................................................... 3

*Bryant v. Compass Group USA, Inc.,*
　　503 F. Supp. 3d 597 (N.D. Ill. 2020) ............................................................ 9

*Bye v. Nationwide Mut. Ins. Co.,*
　　733 F. Supp. 2d 805 (E.D. Mich. 2010) ........................................................ 8

*Chapman v. Yellow Cab Coop.,*
　　875 F.3d 846 (7th Cir. 2017) ........................................................................ 4

*Davis v. Junio Corp.,*
　　22-CV-00776, 2023 WL 2019048 (N.D. Ill. Feb. 14, 2023)............................ 5

*Enriquez v. Navy Pier, Inc.,*
　　2022 IL App (1st) 211414-U.................................................................6, 7, 8

*Gibson v. City of Chicago,*
　　910 F.2d 1510 (7th Cir. 1990)....................................................................... 3

*Haywood v. Flex-N-Gate LLC,*
　　No. 19 CH 12933, 2021 WL 8368185 (Ill. Cir. Ct. Apr. 08, 2021) ................. 9

*Landmark Am. Ins. Co. v. Deerfield Constr., Inc.,*
　　933 F.3d 806 (7th Cir. 2019) ........................................................... 3, 13, 15

*Norberg v. Shutterfly, Inc.,*
　　152 F. Supp. 3d 1103 (N.D. Ill. 2015) .....................................................4, 13

*Patterson v. Respondus, Inc.,*
　　593 F. Supp. 3d 783 (N.D. Ill. 2022) .......................................................... 14

*Payton v. Cnty. of Kane,*
　　308 F.3d 673 (7th Cir. 2002) ..................................................................... 10

*Powell v. Shiseido Americas Corp.,*
　　No. 21-CV-2295, 2022 WL 19914948 (C.D. Ill. Aug. 22, 2022)................... 10

*Ree v. City of Chicago,*
 22 CV 4284, 2023 WL 3123761 (N.D. Ill. Apr. 27, 2023) ........................................ 14

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.,*
 786 F.3d 510 (7th Cir. 2015) ......................................................................................... 4

*Sosa v. Onfido, Inc.,*
 600 F. Supp. 3d 859 (N.D. Ill. 2022) ............................................................................ 3

*Thornley v. CDW-Government, LLC,*
 Case No. 2020 CH 04346 (Ill. Cir. Ct. June 25, 2021) ........................................ 6, 8, 9

*Thornley v. Clearview AI, Inc.,*
 984 F.3d 1241 (7th Cir. 2021) ..................................................................................... 12

*Van Housen, et al. v. Amazon.com, Inc., et al.,*
 Case No. 1:23-cv-15634 ............................................................................................... 10

*Vance v. Amazon.com Inc.,*
 525 F. Supp. 3d 1301 (W.D. Wash. 2021) .................................................................. 14

*Xechem, Inc. v. Bristol-Myers Squibb Co.,*
 372 F.3d 899 (7th Cir. 2004) ....................................................................................... 15

## Statutes

740 ILCS 14 ..............................................................................................................passim

## Rules

Fed. R. Civ. P. 12 ......................................................................................................... 14

## I.    INTRODUCTION

Plaintiff Carleen Coulter has established plausible Illinois' Biometric Information Privacy Act ("BIPA") claims. Hudson's[1] Nonstop stores in Chicago Midway and O'Hare Airports rely on Amazon's Just Walk Out ("JWO") surveillance network that takes images of shoppers' bodies, scans their facial geometry, hand geometry, and their voice prints to track their movements, and then automatically charges them for selected convenience store items. Neither Hudson nor Amazon ever secured the informed consent required by BIPA to collect such data. Nor do Hudson or Amazon detail their retention and destruction protocols for the biometric data they collect, use, and disseminate, as BIPA requires.

Hudson asks this Court to broadly interpret the government contractor exemption to BIPA to immunize itself from liability for unlawfully collecting biometric data,[2] despite merely being a private airport retail tenant occupying spaces in City-owned terminals. As a for-profit retail tenant that pays rent and fees under standard real estate principles, Hudson cannot plausibly claim to be "working for" the City as a contractor, subcontractor, or legal partner under BIPA. Indeed, its agreement with the City explicitly disavows that relationship. Under Hudson's radical reimagining of BIPA's government contractor carveout, similar airport retail tenants, like Big Bowl, Tallboy Taco, and Garrett's Popcorn, would be exempt from BIPA's rules and restrictions simply because they have *any* sort of contract with a government agency. BIPA's "government contractor" exemption does not

---

[1] "Hudson" refers to Defendants Hudson Group (HG) Retail and Dufry America, LLC.

[2] "Biometric data" includes both biometric *identifiers*, like facial or hand geometry, and voiceprints, as well as biometric *information*, which includes the data output from an analysis of biometric identifiers.

protect private businesses like Hudson, which operate for private profit and do not carry out a governmental function, let alone a function that requires them to collect biometric data. Hudson pays the City for the privilege to operate at its airports and has no genuine basis to claim the "government contractor" exemption from BIPA.

The Court should reject Hudson's motion to dismiss in its entirety.

## II.    PLAINTIFF'S ALLEGATIONS

In Chicago's Midway and O'Hare International Airports, Hudson employs Amazon's JWO technology to collect, use, store, and disseminate travelers' biometric data. (Compl. ¶¶ 23-37). Specifically, the Amazon JWO patent application for the biometric technology that Hudson's Nonstop stores rely upon, attached as Exhibit A to the Complaint (referenced herein as "Ex. A"), US 2015/0012396 A1 ("the '396 Patent"), describes overhead recognition cameras that "capture images of users and/or locations within the materials handling facility," including their facial geometry (Compl. ¶¶ 24, 30; Ex. A at ¶ 31). Additionally, cameras are positioned at inventory shelves and transition areas to "capture images," such as "a user's hand" interacting with items for sale, in which images collected contain shopper hand geometry and are scanned for identification. (Compl. ¶¶ 27-30, 32; Ex. A at ¶ 31). Microphones are placed throughout the store to "record sounds made by the user" and collect voiceprints (Compl. ¶ 31; Ex. A at ¶ 54).

After collecting biometric data, the JWO technology employs computer algorithms to analyze the images collected from Hudson Nonstop store cameras and captures undisclosed measurements from images that contain shoppers' bodies, including their faces and hands, as well as the distinctive features of voice recordings. (Compl. ¶¶ 24-37; Ex. A at ¶¶ 28, 35, 38, 52). These algorithms "identify a user" from their biometric identifiers and

2

"determine the location of the user" as they move throughout the store. (Compl. ¶¶ 31; Ex. A at ¶¶ 28, 35, 38, 52). Additional cameras, sensors, and algorithms are leveraged to detect when products are taken off shelves and placed in a "virtual cart" associated with the user. (Compl. ¶ 3; Ex. A at ¶ 43, Fig. 2). As a shopper exits the store, as identified by proprietary cameras, the items in the traveler's virtual cart are charged to their account or credit card "without having to stop or otherwise be delayed" at a register (Compl. ¶ 35; Ex. A at ¶ 17).

Hudson never provides travelers with a written disclosure about its biometric data collection practices before obtaining their data. (Compl. ¶¶ 38-40, 43). Hudson never obtains informed written consent to store, use, and disseminate the biometric data. (Compl. ¶¶ 41-42). Hudson never tells shoppers it profits from shoppers' biometric data by operating JWO technology in its Nonstop stores to effectuate sales of goods and minimize labor costs. (Compl. ¶ 44). Further, Hudson discloses individuals' biometric data to Amazon's servers and cloud platforms (a third party) to process transactions without shoppers' consent (Compl. ¶¶ 41-42; Ex. A at ¶¶ 13, 47, Fig. 9).

### III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)). The Court must accept the factual allegations in the Plaintiff's Complaint as true and view the facts in the light most favorable to the Plaintiff. *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 809 (7th Cir. 2019). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 867 (N.D. Ill. 2022) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "[A]ll this means is that the plaintiff must include

enough details about the subject-matter of the case to present a story that holds together. At this pleading stage, [the court] do[es] not ask whether these things actually happened; instead, the proper question to ask is still *could* these things have happened." *Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103, 1105 (N.D. Ill. 2015) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 526 (7th Cir. 2015)) (emphasis in original). After discovery, "[a] full description of the facts that will prove the plaintiff's claim comes later, at the summary-judgment stage or in the pretrial order." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017).

## IV.  ARGUMENT

### A.  Hudson is a retail tenant, not a government contractor, subcontractor, or legal partner "working for" the City and is thus not exempt from BIPA.

Hudson's attempt to claim an exemption under BIPA as a contractor "working for" the City of Chicago is baseless. *See* Hudson's Motion to Dismiss the Complaint ("Motion"), at 5-8. Hudson asks this Court to endorse a new interpretation of BIPA that would convert all retail tenants in Chicago's airports into businesses "working for" the government that are exempt from BIPA. *Id*. But Hudson's position runs contrary to BIPA's plain language, precedent, and Hudson's airport retail license with the City.

Hudson's argument defies logic and law: having a retail license agreement to operate shops within City-owned airports does not transform a private business into a government contractor carrying out a public function, nor exempt it from BIPA. Hudson, like other airport concessioners, is an airport retail tenant. Like any retail arrangement between stores in a strip mall and the mall's owner, Hudson pays rent and fees to the City to conduct its business from its licensed retail space within the City-owned airport terminals. The company is in no way a contractor, subcontractor, or agent "working for" the City of

4

Chicago or any other City or State agency and performs no governmental function for which its collection of biometric data is exempt.

BIPA provides an exemption for government contractors "working for" the government when they collect biometric data. 740 ILCS 14/25(e). BIPA does not define "contractor, subcontractor or agent[.]" *Id.* "[T]he court must give effect to every word, clause, and sentence in a statute and must not read it to render any part inoperative, superfluous, or insignificant. When giving effect to the legislature's intent, courts look to the plain and ordinary meaning of the statutory language; courts also construe the statute holistically and may consider the reason for the statute and the consequences of interpreting the statute in a certain way." *Davis v. Jumio Corp.*, 22-CV-00776, 2023 WL 2019048, at *5 (N.D. Ill. Feb. 14, 2023) (citations and quotations omitted).

There is no need for complex statutory interpretation in this case. Hudson's Retail Agreement makes clear the company is not a contractor, subcontractor, or agent of the City. The City and Hudson maintain a traditional landlord ("licensor") - tenant ("licensee") relationship: "The City grants Licensee [Hudson] a license to (i) conduct Concession Operations. . . in the Retail Space. . . subject to the terms of this agreement." ECF 24-8 ("Retail Agreement") at 19 (§ 4.1, "Rights and Obligations of Licensee"). "In consideration of the City's grant of the license to use and operate its Concession Operations in the Licensed Space. . . Licensee must pay to the City. . . Fees in an amount equal to Additional Fees. . . plus the greater of: (a) the Percentage Fees payable. . . and (b) the Minimum Guarantee Fee[.]" ECF 24-8 at 41 (§ 7.1, "Fees").

*Nowhere* within Hudson's Retail Agreement does the City recognize Hudson as a legal partner, contractor, subcontractor, or agent or categorize Hudson as "working for" the

City in any way. *See generally,* ECF 24-8. The City specifically disclaims such a relationship:
"nothing in this Agreement creates or establishes any partnership, joint venture, association
or organizations of any kind between the City and Licensee or to make Licensee the
representative, employee, partner or agent of the City for any purpose whatsoever." *Id.* at 76
(§ 12.17, "Relationship of Parties"). "Nothing contained in this Agreement is intended to
create or establish any relationship other than that of licensor and licensee[.]" *Id.* In fact,
rather than entering a legal partnership, contractor, subcontractor, or agent relationship with
Hudson to assist the City in the operation of airports, the City required Hudson to agree *not
to* interfere with its operation of them. *Id.* (§ 12.16, "Non-Interference with Operation of
Airport"). On this basis alone, Hudson is not exempt from BIPA's regulatory scheme,
certainly not at the motion to dismiss stage.

Notwithstanding the plain terms of its agreement, the very cases Hudson cherry-
picked to claim exemption as a government contractor, *Enriquez v. Navy Pier, Inc.*, 2022 IL
App (1st) 211414-U, ¶ 1, appeal denied, 201 N.E.3d 582 (Ill. 2023), and *Thornley v. CDW-
Government, LLC*, Case No. 2020 CH 04346 (Ill. Cir. Ct. June 25, 2021) (attached to
Hudson's motion as ECF 24-11, "*Thornley* Opinion and Order"), undermine its argument by
demonstrating that Hudson fails to meet the criteria for the government contractor
exemption. *See* Motion at 7-8. Together, these cases interpret the government contractor
exemption as applying only to those entities that "work for" a government agency by
performing governmental functions or by carrying out a government agency's directives
regarding biometric data. Hudson meets neither criterion.

In *Enriquez v. Navy Pier, Inc.*, the court examined whether non-profit Navy Pier, Inc.
("NPI") qualified as a government contractor exempt from BIPA under its agreement with

the Metropolitan Pier and Exposition Authority ("MPEA"). 2022 IL App (1st) 211414-U, ¶ 8. The agreement between MPEA and NPI "transferred operational responsibility for Navy Pier to NPI" and gave NPI "exclusive authority" over all aspects of Navy Pier's operations at NPI's expense. *Id.* at ¶ 10. "[T]he underlying substance of the Agreement is for NPI to manage, operate, and develop virtually all aspects of Navy Pier on behalf of the MPEA." *Id.* at ¶ 22. The court determined that NPI performed key governmental services on behalf of MPEA pursuant to its agreement, making it a government contractor. *Id.* The court found that NPI's collection of biometric data via fingerprint scan when an employee clocked in and out of work was "within the scope of its work for the MPEA" as a government contractor tasked with operating Navy Pier. *Id.* at ¶ 25.

Unlike NPI's agreement with MPEA, which transferred comprehensive operational control to NPI, Hudson does not perform *governmental* services on behalf of Midway Airport, and, therefore, is not a contractor exempt from BIPA.[3] Hudson rents retail space to "conduct Concession Operations," sell convenience items to travelers, and "pay[s] to the City. . . Fees" in return. ECF 24-8 at 19, 41. Hudson points to no provision in its agreement with Midway

---

[3] The three-part "test" Hudson cites to assess contractor status for BIPA exemption requires an entity to be (1) a contractor (2) of a government unit (3) working for that unit when collecting biometric data. *Enriquez*, 2022 IL App (1st) at ¶ 19. First, the Retail Agreement explicitly defines Hudson as a "licensee," stating "[n]othing contained in this Agreement is intended to create or establish any relationship other than that of licensor and licensee between the City and Licensee." ECF 24-8 at 76. The City granted Hudson a "license to (i) conduct Concession Operations in accordance with the Permitted Use solely in the Retail Space." ECF 24-8 at 19. In return, Hudson pays rent and fees to the City but provides no governmental services or "work" for the City. *Id.*; *Enriquez*, 2022 IL App (1st) at ¶¶ 22-23. Hudson thus fails the *Enriquez* test as it is not a contractor of a government unit working for that unit when collecting biometric data. *Id.* at ¶ 19.

Airport that in actuality expands the parties' relationship "beyond the typical landlord-tenant relationship." *Enriquez*, 2022 IL App (1st) 211414-U at ¶ 24.[4]

The relationship between Hudson and Midway Airport is also distinguishable from the government contractor relationship in *Thornley v. CDW-Government, LLC*. In *Thornley*, the Chicago Police Department ("CPD") contracted with defendant CDW-Government ("CDW-G") to obtain a price quote from non-party Clearview AI for access to its facial recognition database, which CDW-G did at the CPD's direction and which CPD agreed to pay. *Thornley* Opinion and Order, at 1-3. CDW-G then secured access to the facial recognition database for CPD and delivered it electronically to CPD. *Id.* The plaintiffs sued CDW-G for its role in the sale of the facial recognition database to CPD. *Id.* Relying in part on the agreement between CDW-G and CPD, the court found that CDW-G was "working for" a government entity when it carried out the transaction because it was specifically "engage[d] to furnish materials or provide services concerning biometric identifiers" by procuring the Clearview AI database. *Id.* at 3-6. That background stands apart from Hudson's retail license. *Id.* at 1-5. Unlike the defendant in *Thornley*, Hudson does not provide a government service or collect biometric data "at a government agency's request and direction," and thus cannot claim protection under the government contractor exemption. *Thornley* Opinion and Order, at 4.

---

[4] Hudson claims a partnership with the City as a government contractor for airport renovations, allowing it to escape BIPA's restrictions. But the Midway Retail Agreement states otherwise and Hudson provides no contract establishing legal partnership in the Midway Modernization program. Companies like Hudson "have a great incentive to describe circumstances in ways that escape the explicit terms of their contracts." *Bye v. Nationwide Mut. Ins. Co.*, 733 F. Supp. 2d 805, 817 n. 7 (E.D. Mich. 2010) (rejecting attempt to rewrite contract in insurance dispute).

This distinction aligns with the policy behind BIPA's § 25(e) exemption. The Illinois legislature exempted government contractors like NPI and CDW-Government from BIPA by recognizing they assist the government in carrying out public services that do not implicate the same profit motives that incentivize for-profit corporations, like Hudson, to wrongfully exploit biometric data. *Bryant v. Compass Group USA, Inc.*, 503 F. Supp. 3d 597, 601 (N.D. Ill. 2020) (explaining that "government agencies have no profit motive to exploit individuals' biometric information, so the perceived dangers associated with possession of sensitive information are less severe vis-à-vis government agencies and contractors subject to their supervision."); *Haywood v. Flex-N-Gate LLC*, No. 19 CH 12933, 2021 WL 8368185, at *4 (Ill. Cir. Ct. Apr. 08, 2021).

Hudson's attempt to equate its biometrically-enabled retail sales at Chicago airports to a government contractor collecting (or assisting in the collection of) biometric data for a government purpose misconstrues the statute, relevant precedent, and Hudson's airport license establishing a tenant-landlord relationship. Indeed, it is precisely the "attendant risks and dangers. . . posed by the private sector's growing use of biometrics to *facilitate financial transactions*," like Hudson's use of JWO technology, that served as the impetus for the BIPA legislation. *See Thornley* Opinion and Order, at 4 (emphasis added); *see also* 740 ILCS 14/5(b). BIPA's government contract exemption was not meant to and does not apply to a private retailer like Hudson. [5]

---

[5] To the extent Hudson argues that Plaintiff lacks standing to bring BIPA claims related to the O'Hare Airport location, Hudson wrongly conflates Article III standing and class certification. *See* Motion at 8 n 6. It is undisputed that Plaintiff has individual standing to pursue claims regarding Hudson's BIPA violations at Midway Airport. Whether she can represent a class pursuing claims related to a location she did not visit is a question for class certification under Rule 23. *See Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008) ("In our view, it is best to confine the term 'standing' to the Article III inquiry and thus to keep it

**B.      Hudson violates BIPA by operating JWO at its airport stores in Illinois.**

BIPA prohibits private entities from collecting, using, storing, or disseminating "biometric identifier[s]" or "biometric information" without notice and consent. 740 ILCS 14/15. A "[b]iometric identifier" is "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. "Biometric information" means "any information . . . *based on* an individual's biometric identifier used to identify an individual." *Id.*

**1.   Plaintiff's Complaint states a claim under § 15(a) of BIPA: Hudson lacks a publicly available retention and deletion policy.[6]**

Section 15(a) of BIPA provides that "[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information. . . ." 740 ILCS 14/15(a). The biometric data must be permanently destroyed "when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

---

separate from the plaintiff's entitlement to relief or her ability to satisfy the Rule 23 criteria."); *Payton v. Cnty. of Kane*, 308 F.3d 673, 677 (7th Cir. 2002) (cautioning parties against "conflating the standing inquiry with the inquiry under Rule 23 about the suitability of a plaintiff to serve as a class representative[.]); *Powell v. Shiseido Americas Corp.*, No. 21-CV-2295, 2022 WL 19914948, at *6-8 (C.D. Ill. Aug. 22, 2022) (rejecting argument that plaintiff did not have standing to pursue BIPA claims related to websites she never visited because it conflated Article III standing with class certification).

[6] This case was consolidated before Your Honor as a related case with *Van Housen, et al. v. Amazon.com, Inc., et al.*, Case No. 1:23-cv-15634, another BIPA case premised upon Amazon's use of JWO technology. Amazon.com, Inc. is represented by the same defense counsel as Hudson and raised similar technological arguments about JWO's biometric data collection, use, storage, and dissemination, which are fulsomely addressed in the Plaintiffs' Response in Opposition to Amazon's Motion to Dismiss. *See* ECF 33.

Plaintiff has alleged that Hudson collects and uses biometric data and does not provide a publicly available retention schedule. Compl. ¶ 43. Hudson doesn't argue otherwise; thus, Plaintiff pleads a Section 15(a) claim that Amazon lacked (and continues to lack) a compliant public biometric data retention policy.

### 2. Plaintiff's Complaint states a claim under § 15(b) of BIPA: Hudson never obtained her written informed consent before collecting biometric data.

Section 15(b) requires private entities to obtain written permission before collecting or obtaining someone's biometric data and must inform the person in writing that biometric data is being collected and stored, the specific purpose and period for which it will be used, and receive a written release from the person consenting to this collection and use. 740 ILCS 14/15(b). As Plaintiff alleges, JWO technology uses a network of cameras to capture images of shoppers' bodies, including images of their faces and hands, and microphones to record customers' voices and then employs propriety algorithms—to scan and measure facial geometry, hand geometry, and identify voice characteristics—to pinpoint identity, what they select in the store, and effectuate checkout. Compl. ¶¶ 22-40. Plaintiff asserts that Hudson never provided shoppers with the required written disclosures about its collection, use, storage, and dissemination of their biometric data, nor obtained mandated signed releases. Compl. ¶¶ 12, 38-40. These allegations state a plausible claim under Section 15(b) that Hudson lacked the requisite consent to collect and use biometric data.

### 3. Plaintiff's Complaint states a claim under § 15(c) of BIPA: Hudson profited from her biometric data.

Section 15(c) of BIPA makes it unlawful for any "private entity in possession of a biometric identifier or biometric information" to "sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS

14/15(c). Hudson collected the Plaintiff's biometric data through Amazon's proprietary hardware, which was then scanned and processed by Amazon's proprietary software to extract biometric data like facial geometry and voiceprints to identify shoppers, track their movements and item selections, and then automatically charge for items upon exit. Compl. ¶¶ 22-40, 44; Ex. A at ¶¶ 28, 31, 35, 38, 52, 54. Hudson profits from store purchases enabled by JWO technology. Compl. ¶ 44. "JWO technology enables Hudson with an advanced solution for in-store management with minimal human labor costs. Inherently, by using JWO in its stores, Hudson is profiting from the collection, use, storage, and dissemination of every JWO shopper's data." *Id.*[7]

### 4. Plaintiff's Complaint states a claim under § 15(d): Hudson disclosed biometric data without her written informed consent.

Section 15(d) of BIPA makes it unlawful for private entities to disclose, redisclose, or disseminate a person's biometric data without first obtaining that person's informed written consent, with few exceptions inapplicable here. 740 ILCS 14/15(d). Plaintiff alleges that Hudson discloses customers' biometric data to "computing resources" external to Hudson, including Amazon servers and other third-party servers and cloud platforms for computer processing, wherein Amazon then employs an algorithm to scan and extract geometry and other distinctive voice attributes for shopper identification on a computer platform external to the store itself. Compl. ¶¶ 22-42; Ex. A at ¶¶ 13, 47, Figs. 2 & 9. This dissemination of

---

[7] Hudson argues that Plaintiff's Section 15(c) claim fails because BIPA, as "a general rule" "prohibits the operation of a market in biometric identifiers and information," *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1247 (7th Cir. 2021). *See* Motion at 4, 14-15. However, the Seventh Circuit in *Thornley* acknowledged private entities can unlawfully profit under BIPA in *many* ways, *e.g.*, the sale of biometric data, or "scraping" data from websites. It is axiomatic that profiting from the sale of goods enabled by biometric collection, use, storage, and dissemination would qualify as "otherwise profit[ing]" from a "a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

biometric data occurs without first obtaining written informed consent from shoppers. Compl. ¶¶ 38-40. By disregarding BIPA's biometric data disclosure protections, Hudson commits the substantive privacy violations Illinois's statute aims to prevent. *Id*. Plaintiff has stated a Section 15(d) violation based on Amazon's patent explicitly describing the dissemination of obtained biometric data to "computing resources" external to Hudson.

### C. Hudson's Unsubstantiated and Untested Technological Claims Must Be Rejected.

Hudson asserts that "Plaintiff merely speculates" that Amazon's '396 Patent relates to the JWO technology Hudson employs. Motion at 10. Yet the detailed allegations in the Complaint, taken as true, render it reasonable to infer a relationship between the processes described in Amazon's patents and Hudson's JWO technology. Specifically, the '396 Patent describes a surveillance system placing cameras and sensors throughout a retail facility to capture images of customers, employs a proprietary biometric-based recognition software to identify those customers, track their movements picking up and returning items, and automatically charge their account upon exit without needing to check out. Compl. ¶¶ 22-37; Ex. A ¶¶ 28, 31, 43, 52-54. This patented process closely mirrors how Hudson's JWO technology functions as alleged. Compl. ¶¶ 22-44. The consistent technical descriptions support a reasonable inference that Amazon's patented biometric tracking system relates to the one Hudson employs, and Hudson identifies no other patents that purportedly cover the proprietary JWO technology. Hudson may ultimately show the systems differ in their final implementation, but at the pleading stage, Plaintiff needs only a basis to allege that JWO plausibly collects biometric data as described in the patent. *Norberg*, 152 F. Supp. 3d at 1105. Once alleged and supported with an adequate, good faith basis, Plaintiff's allegations must be accepted as true at the pleading stage. *Landmark*, 933 F.3d at 809.

Hudson further argues that "Plaintiff's own allegations are inconsistent with the assertions that JWO technology captures [biometric data]," relying on various unsubstantiated claims about the scope and abilities of the JWO technology. Motion at 13-14.[8] For example, Hudson submits alternative inferences about the ability of the JWO cameras in its stores to capture biometric data, like body geometry, face geometry, hand geometry, and voice prints,[9] due to factors like camera angles and product obstructions. *Id.* Hudson similarly argues that other "common realities" like face masks and hats make

---

[8] In support of its argument, Hudson attaches a transcript from a marketing video on the JWO website, where an Amazon spokesman makes the convenient and conclusory assertion in passing that JWO does not perform "facial recognition," along with a declaration from a private investigator, Motion at 2, 13; ECF 24-3 & 24-4; *see infra* n. 10. Plaintiff does not cite the declaration in the Complaint, and the only mention of the JWO website does not include a reference to the marketing video. Compl. ¶ 38, n. 32. The "incorporation-by-reference-doctrine allows the Court to consider documents outside the complaint on a motion to dismiss. . . [only] if the documents are referenced in the plaintiff's complaint, are concededly authentic, and are central to the plaintiff's claim." *See e.g., Ree v. City of Chicago*, 22 CV 4284, 2023 WL 3123761, at *4 (N.D. Ill. Apr. 27, 2023). "If the connection between the attachments and the complaint is more attenuated," as it is here, "the court must 'either convert the 12(b)(6) motion into a motion for summary judgment under Rule 56, or exclude the documents attached to the motion to dismiss and continue under Rule 12.'" *Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 804 (N.D. Ill. 2022) (citation omitted). The Court should thus exclude the declaration and transcript. Alternatively, Plaintiff requests discovery on JWO's technological capabilities. Fed. R. Civ. P. 12(d).

[9] Hudson conflates facial, hand, and voice recognition, which are technological analyses that first require a separate collection of identifiers like facial and hand geometry and distinctive voice attributes. BIPA prohibits *collecting any* geometric data or measurements relating to an individual's features, regardless of whether that data is subsequently used to identify a specific person through facial, hand, or voice recognition. *See* 740 ILCS 14/10. The "bottom line is that a 'biometric identifier' is not the underlying medium itself, or a way of taking measurements, but instead is a set of measurements of a specified physical component. . . used to identify a person." *Vance v. Amazon.com Inc.*, 525 F. Supp. 3d 1301, 1312 (W.D. Wash. 2021). Therefore, Hudson cannot sidestep its BIPA obligations simply by taking geometric scans of faces, hands, and collecting voice prints, or those contained within images of shoppers' bodies, and then anonymizing or aggregating that data into some other form that it contends does not constitute facial or other recognition—like the outline of a person—improper biometric collection still occurs.

collecting facial biometrics from overhead cameras implausible. *Id.* at 2-3, 13-14. While Hudson offers speculative reasons why the technology might have difficulty capturing biometric data in certain situations, these are fact-based issues that cannot be properly resolved on a motion to dismiss absent discovery, particularly when the representations directly conflict with Plaintiff's allegations. *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017) (explaining that while it is "conceivable" that what defendant is collecting "does not fit within the definition of biometric identifier," the plaintiffs' allegations must be taken as true at the pleading stage); *see also Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Complaints need not contain *any* information" about possible defenses "and may not be dismissed" because the defendant suggests "the presence of an affirmative defense." (emphasis in original)). The unsubstantiated possibility some shoppers may evade biometric collection in rare circumstances does not mean that Hudson does not regularly collect biometric data through JWO technology. The Court should reject Hudson's speculative, unsubstantiated, and untested representations concerning the JWO technology's ability to collect biometric data.

## V.    CONCLUSION

Accordingly, the Plaintiff respectfully requests that the Court deny Hudson's motion to dismiss.

Dated: February 15, 2024

Respectfully Submitted,

/s/ Justin N. Boley
Kenneth A. Wexler
Justin N. Boley
Tyler J. Story
Eaghan S. Davis
**WEXLER BOLEY & ELGERSMA LLP**
311 S. Wacker Drive, Suite 5450
Chicago, Illinois, 60606
Tel: (312) 346-2222
Fax: (312) 346-0022
kaw@wbe-llp.com
jnb@wbe-llp.com
tjs@wbe-llp.com
esd@wbe-llp.com
Firm ID No. 99616

Ryan F. Stephan
James B. Zouras
Catherine Mitchell
**STEPHAN ZOURAS, LLP**
222 W. Adams Street, Suite 2020
Chicago, Illinois, 60606
Tel: (312) 233-1550
Fax: (312) 233-1560
rstephan@stephanzouras.com
jzouras@stephaszouras.com
cmitchell@stephanzouras.com

*Attorneys for Plaintiff and the Proposed Class*

**CERTIFICATE OF SERVICE**

I, Justin N. Boley, hereby certify that on February 15, 2024, I electronically filed the

Response in Opposition to Hudson's Motion to Dismiss using the Court's electronic filing

system which will send such filing to all attorneys of record.

*/s/ Justin N. Boley*

**WEXLER BOLEY & ELGERSMA LLP**

311 S. Wacker Drive, Suite 5450

Chicago, Illinois, 60606
