**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CARLEEN COULTER, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br>vs.<br><br>HUDSON GROUP (HG) RETAIL, LLC, D/B/A HUDSON NONSTOP and DUFRY AMERICA, LLC,<br><br>    Defendants. | Case No. 1:23-cv-16176<br><br>Judge: Honorable LaShonda A. Hunt<br><br>Magistrate: Honorable Gabriel A. Fuentes |

## **DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CLASS ACTION COMPLAINT**

Defendants Hudson Group (HG) Retail, LLC, D/B/A Hudson Nonstop and Dufry America, LLC (collectively "Defendants" or "Hudson"), by and through its undersigned attorneys, hereby submit their Answer to Plaintiff's Class Action Complaint. The numbered paragraphs of this Answer correspond to the numbered paragraphs in the Class Action Complaint. Headings contained in the Class Action Complaint are not substantive allegations to which an answer is required and to the extent headings are repeated in this Answer, it is solely for ease of reference. To the extent the headings are substantive allegations to which an answer is required, Defendants deny any such allegations. Each allegation not specifically admitted below is denied. Defendants responds to the allegations as follows:

## I.      INTRODUCTION

1.      On June 21, 2021, Plaintiff Carleen Coulter entered a Hudson Nonstop store located at Chicago Midway International Airport, located at 5700 South Cicero Avenue, Chicago, Illinois, 60638, and made a purchase.

**ANSWER:** Hudson admits that a Hudson Nonstop store was located at Chicago Midway International Airport on June 21, 2021. Hudson lacks knowledge or information sufficient to form a belief about the remaining allegations of Paragraph 1, and on that basis denies them.

2.      During the Plaintiffs' visit, Hudson Nonstop employed Amazon's Just Walk Out ("JWO") technology to collect, use, store, and disseminate her biometric information and identifiers ("biometric data"), to identify her, to charge her for items bought without using a traditional store clerk, cash register, or "self-checkout" machine.

**ANSWER:** Hudson admits that Hudson Nonstop utilizes Amazon's Just Walk Out technology. Hudson lacks knowledge or information sufficient to form a belief about the allegations of Paragraph 2 related to Plaintiff, and on that basis denies them. Hudson denies the remaining allegations of Paragraph 2.

3.      JWO technology, which Amazon sells to other retailers for use in their stores, leverages a complex network of sensors, cameras, machine learning, and artificial intelligence to automatically detect when products are taken from store shelves and keep track of these items in a virtual cart. At the heart of this system is the collection, use, storage, and dissemination of images of shoppers' bodies–including their faces and hands–and their voice prints–which it scans and processes via computer algorithm to identify shoppers and the products they select, then processes payment upon their exit.

**ANSWER:** Hudson lacks knowledge or information sufficient to form a belief about the allegations of Paragraph 3 directed to Amazon (who is not a party to this case) and on that basis denies them. Hudson admits that the Just Walk Out technology leverages computer vision, sensor fusion, and deep learning, but lacks knowledge or information sufficient to form a belief about how the Just Walk Out technology works beyond Amazon's public statements, and on that basis denies the remaining allegations of Paragraph 3.

4.      In a rapidly evolving world of technology, the drive for efficiency and convenience comes at the steep price of personal privacy. JWO technology is the exemplar of this conundrum.

JWO promises shoppers a frictionless shopping experience while promising retailers like Hudson an increase in profits by substantially decreasing labor costs for their in-store personnel.

**ANSWER:** Hudson lacks knowledge or information sufficient to form a belief about the allegations of Paragraph 4 directed to Amazon (who is not a party to this case) and on that basis denies them. Hudson denies the remaining allegations of Paragraph 4.

5.     Use of JWO technology presents unparalleled privacy concerns for shoppers: massive amounts of shopper biometric data are being collected and used by the retailer to train complex surveillance technology that is currently being employed in direct violation of the Illinois Biometric Information Privacy Act ("BIPA") (740 ILCS 14/1, *et seq.*).

**ANSWER:** Paragraph 5 consists of conclusions of law to which no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 5.

### A. JWO Technology in Pictures

6.     The images below were taken inside a store that employs JWO technology. It is representative of technology also employed at Hudson outlets. **Graphics A** and **B** show shoppers entering through a store's gates by scanning a code on an App or their credit card, **C** shows a customer shopping, **D** shows the store's ceiling which contains proprietary recognition cameras (black boxes) that collect, use, store, and disseminate biometric data to Amazon and third-party servers and follow shopper movements through the store, track the items a shopper picks up, add them to a digital ledger, and electronically invoice the shopper for the items upon walking out, in **E and F**.

**ANSWER:** Hudson lacks knowledge or information sufficient to form a belief about the allegations of Paragraph 6 regarding the referenced graphics and on that basis denies them. Hudson admits that customers to a Hudson Nonstop store can enter either through inserting their credit or debit card, or by utilizing the Amazon One device at the entry gates. To the extent a further response is required, Hudson denies the remaining allegations of Paragraph 6.

### B. Hudson Violates BIPA

7.     Consistent with the pictures shown above, the Plaintiff was not provided with written disclosures about the collection, use, storage, or dissemination of her biometric data, nor did she provide Hudson informed written consent, before entering Hudson Nonstop. In capturing, storing, and disseminating the biometric data of Plaintiff and others without proper disclosures and without obtaining their written consent, Hudson violated and continues to violate BIPA.

**ANSWER:** Paragraph 7 consists of conclusions of law to which no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 7.

8.      In 2008, the State of Illinois enacted BIPA to serve "[t]he public welfare, security, and safety. . . by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric data"— namely, identifiers such as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," and biometric information derived from those identifiers. In so doing, the Illinois legislature recognized that "[t]he full ramifications of biometric technology are not fully known," and that "[b]iometrics.. . are biologically unique to the individual; therefore, once compromised, the individual has no recourse."

**ANSWER:** Hudson admits that Plaintiff is quoting Illinois's Biometric Information Privacy Act ("BIPA"). To the extent any implication as to the relevance of BIPA to the current action is being implied, Hudson denies that BIPA is applicable to the current action.

9.      BIPA addresses the dangers posed by the mishandling of biometric data by providing a right of action to any person who is subjected to a violation of the Act within the State of Illinois.

**ANSWER:** Hudson admits that Plaintiff cites to BIPA and that the cited section, 740 ILCS 14/20, details a right of action. To the extent any implication as to the relevance of BIPA to the current action is being implied, Hudson denies that BIPA is applicable to the current action. The remaining parts of Paragraph 9 consist of conclusions of law to which no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 9.

10.     As relevant here, a private entity in the possession of biometric identifiers or information violates BIPA when it:

    i.    collects and captures biometric information before first "inform[ing] the subject.. . in writing that a biometric identifier or biometric information is being collected or stored[,]" "inform[ing] the subject.. . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used," and then "receiv[ing] a written release executed by the subject of the biometric identifier or biometric information";

    ii.    fails to obtain a person's consent before "disclos[ing], redisclos[ing], or otherwise disseminat[ing] a person's.. .

biometric identifier or biometric information" to a third party; and,

iii.    fails to establish a publicly available policy "establishing a retention schedule and guidelines for permanently destroying biometric data," and profits in any way from the use of her biometric data.

**ANSWER:** Hudson admits that Plaintiff cites to and quotes from BIPA. To the extent any implication as to the relevance of BIPA to the current action is being implied, Hudson denies that BIPA is applicable to the current action. The remaining parts of Paragraph 10 consist of conclusions of law to which no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 10.

11.    As a private entity in the possession of biometric information and identifiers obtained by capturing, using, storing, and sharing them through its JWO hardware and software, Hudson violates and continues to violate § 15(a) of BIPA by failing to establish a publicly available policy establishing a retention schedule and guidelines for permanently destroying biometric data obtained from customers entering establishments that use JWO in Illinois.

**ANSWER:** Paragraph 11 consists of conclusions of law to which no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 11.

12.    Hudson violates and continues to violate § 15(b) of BIPA by collecting this biometric data without first providing written notice and obtaining written informed consent from persons entering stores using JWO technology, including Plaintiff and Class Members.

**ANSWER:** Paragraph 12 consists of conclusions of law to which no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 12.

13.    Hudson violates and continues to violate § 15(c) of BIPA by wrongfully profiting from the biometric data it collects from shoppers—including the scans of Plaintiff's and Class Members' facial geometry, hand geometry, and voice print—by using the biometric data it obtains to effectuate purchases, which the company profits from in their stores.

**ANSWER:** Paragraph 13 consists of conclusions of law to which no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 13.

14.    Hudson violates and continues to violate § 15(d) by failing to obtain consent from people before disclosing, redisclosing, and disseminating their biometric identifiers or biometric

information to a third party, in transferring biometric data between individual Hudson stores, AWS servers, Amazon, and third parties, without shoppers' consent.

**ANSWER:** Paragraph 14 consists of conclusions of law to which no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 14.

15. In sum, Hudson obtained the Plaintiff's and Class Members' facial geometry, hand geometry, and voice print through JWO hardware and then stored, used, and disseminated those data scans through its software. In doing so, Hudson profited from the Plaintiff's and Class Members' biometric data and harmed the substantive privacy interests that BIPA was intended to protect.

**ANSWER:** Hudson denies the allegations of Paragraph 15.

## II. PARTIES

16. Plaintiff Carleen Coulter is a natural person residing in the State of Illinois who entered Hudson Nonstop – Midway in Cook County, Illinois during the Class Period.

**ANSWER:** Hudson lacks knowledge or information sufficient to form a belief about the allegations of Paragraph 16 and on that basis denies them.

17. Hudson Group (HG), LLC, d/b/a Hudson Nonstop, is wholly owned by Dufry America, LLC, a Delaware Corporation.

**ANSWER:** Hudson admits that Hudson Group (HG) Retail, LLC is a limited liability company, whose sole member is Hudson Group (HG) Inc. Hudson admits that the sole shareholder of Hudson Group (HG) Inc. is Dufry Americas Holding, Inc.

## III. JURSIDICTION AND VENUE

18. This is a Class action complaint for violations of BIPA (740 ILCS 14/1, *et seq.*), seeking statutory and actual damages.

**ANSWER:** Paragraph 18 describes the nature of Plaintiff's complaint and claims, and no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 18.

19. No federal question is presented by this complaint. Plaintiff brings this complaint solely under state law and not under federal law, and specifically not under the United States Constitution, nor any of its amendments, nor under 42 U.S.C. § 1981 or 1982, nor any other federal

statute, law, rule, or regulation. The Plaintiff believes and alleges that a cause of action exists under state law for the conduct complained of herein.

**ANSWER:** Paragraph 19 consists of conclusions of law to which no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 19.

20.     This Court has personal jurisdiction over the Plaintiff and the Class because they submit to the Court's jurisdiction and the events at issue in the complaint took place in Illinois. This Court has personal jurisdiction specifically over Hudson because it deliberately targeted the Illinois market by actively using JWO technology in its stores. Too, Hudson entered into contracts with Amazon for the use of JWO hardware and software that captures, uses, stores, and disseminates biometric information and identifiers, from which the company profits. Plaintiff's claims, therefore, arise out of, or relate to, Defendant's extensive business contacts and contractual performance within the State of Illinois.

**ANSWER:** Paragraph 20 consists of conclusions of law to which no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 20.

21.     Venue is proper in this County under 735 ILCS 5/1-108 and 2-101 because a substantial part of the acts or omissions giving rise to the claims occurred in Cook County. Specifically, Hudson's collection of Plaintiff's and many Class Members' biometric information occurred within Cook County.

**ANSWER:** Paragraph 21 consists of conclusions of law to which no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 21.

## IV.     FACTS

### A.     Hudson Collects Biometric Data.

### 1.     Plaintiff's JWO Experience.

22.     Plaintiff visited a Hudson Nonstop store equipped with JWO technology. Before the Plaintiff arrived at the store, she did not receive any disclosures about Hudson's collection, use, or disclosure of her biometric information. Upon entry, JWO hardware technology took numerous images of the Plaintiff through a network of cameras (as shown in **Graphic D**), which captured her body geometry–including their facial geometry (overhead cameras) and hand geometry (cameras embedded in shelves), as well as her voice print (microphones placed throughout the store). Hudson's JWO software then processed this biometric data and tied the data to her credit card, tracked the Plaintiff's movements through its network of cameras and sensors, and then ran payment for the items she selected upon exit.

**ANSWER:** Hudson lacks knowledge or information sufficient to form a belief about the allegations of Paragraph 22 as to Plaintiff's experiences and on that basis denies them. Hudson denies the remaining allegations of Paragraph 22.

> **2.    Plaintiff's Experience is Reflected in JWO Patents.**

23.    JWO technology and biometric data collection are shown in its various patent filings.

**ANSWER:** Hudson admits that Plaintiff cites to patents and patent applications in the footnote that were filed by an entity that is not a defendant in this case, and that Plaintiff does not have any evidence to confirm that the cited patents and applications are actually being practiced by the JWO technology. Hudson denies the remaining allegations of Paragraph 23.

24.    The technological underpinnings for JWO were first published in its 2015 patent, entitled "Transition Items from A Materials Handling Facility," Pub. No. US 2015/0012396 A1 (attached as **Ex. A**). The abstract for the technology pronounces:

This disclosure describes a system for automatically transitioning items from a materials handling facility without delaying a user as they exit the materials handling facility. For example, while a user is located in a materials handling facility, the user may pick one or more items. The items are identified and automatically associated with the user at or near the time of the item pick. When the user enters and/or passes through a transition area, the picked items are automatically transitioned to the user without affirmative input from or delay to the user. The patent broadly defines "materials handling facility" to include various environments like libraries, and warehouses, as well as retail and grocery stores like Hudson Nonstop.

**ANSWER:** Hudson admits that Plaintiff is citing to and quoting from a patent application that was filed by a non-defendant, but denies any express or implied relevance of the cited patent application to the current case. To the extent a further response is required, Hudson denies the remaining allegations of Paragraph 24.

25.    This procedure is succinctly demonstrated in one of the patent's process trees:

On a macro-level, JWO technology tracks shoppers' identities by first imaging them when entering the store (referred to in 802 as "transition area"), employs algorithms to scan the images, which include face geometry, to detect them (802–"detect user in transition area") and then ties that data to their account and/or digital cart in the event they are not an account holder (804–

"identify user") to track items they select from shelves (806–"transition[ing] items") and process a payment (814–"provide confirmation to user").

**ANSWER:** Hudson admits that Plaintiff is citing to and quoting from a patent application that was filed by a non-defendant, but denies any express or implied relevance of the cited patent application to the current case. To the extent a further response is required, Hudson denies the remaining allegations of Paragraph 25.

26.     Amazon describes the process at the micro-level in patent **Fig. 2**:

**ANSWER:** Hudson admits that Plaintiff is citing to and quoting from a patent application that was filed by a non-defendant, but denies any express or implied relevance of the cited patent application to the current case. To the extent a further response is required, Hudson denies the remaining allegations of Paragraph 26.

### Cameras, Collection of Facial Geometry, Shopper, and Item Identification

27.     "**Fig. 2** shows additional components of a materials handling facility 200,19 according to some implementations. Generally, the materials handling facility 200 may include one or more image capture devices, such as cameras 208. For example, one or more cameras 208 may be positioned in locations of the materials handling facility 200 so that images of locations within the materials handling facility can be captured. In some implementations, the image capture devices 208 may be positioned overhead, such as on the ceiling, to capture images of users and/or locations within the materials handling facility. In addition, in some implementations, one or more cameras 208 may be positioned on or inside of inventory locations. For example, a series of cameras 208 may be positioned on external portions of the inventory locations and positioned to capture images of users and/or the location surrounding the inventory location." "[C]ameras may also be positioned at or near transition areas to capture images of users as they enter or pass through the transition area."

**ANSWER:** Hudson admits that Plaintiff is citing to and quoting from a patent application that was filed by a non-defendant, but denies any express or implied relevance of the cited patent application to the current case. To the extent a further response is required, Hudson denies the remaining allegations of Paragraph 27.

28.     "Any type of camera and/or configuration of cameras may be used with the implementations described herein. For example, one or more of the cameras may be [red, green,

blue] [(]RGB[)] cameras. In other implementations, one or more of the cameras may be depth sensing cameras. In addition to cameras, other input devices, such as pressure sensors, infrared sensors, a scale, load cells, a volume displacement sensor, a light curtain, etc., may be utilized with the implementations described herein. For example, a pressure sensor and/or a scale may be used to detect when an item is added and/or picked from inventory locations. Likewise, an infrared sensor may be used to distinguish between a user's hand and inventory items."

**ANSWER:** Hudson admits that Plaintiff is citing to and quoting from a patent application that was filed by a non-defendant, but denies any express or implied relevance of the cited patent application to the current case. To the extent a further response is required, Hudson denies the remaining allegations of Paragraph 28.

29.     "Various techniques may be used to identify a user. For example, ***image capture and facial recognition may be used***... In some implementations, the user has a portable device that may be detected when the user enters the materials handling facility. Alternatively, an application executing on a portable device may be utilized by the user to identify themselves. The portable device and/or application may include a unique identifier that is provided to the inventory management system [i.e. code from an App] 150 and used to identify the user. When the user is identified, a user profile associated with the user and maintained by the inventory management system is determined. In some implementations, a payment instrument (e.g., credit card, debit card, check card, etc.) is associated with the user profile and may be checked to confirm that the payment instrument is valid and may be used by the user to pay for any items picked by the user."

**ANSWER:** Hudson admits that Plaintiff is citing to and quoting from a patent application that was filed by a non-defendant, but denies any express or implied relevance of the cited patent application to the current case. To the extent a further response is required, Hudson denies the remaining allegations of Paragraph 29.

30.     "In addition to identifying the user, the user's location within the materials handling facility and identification of the inventory location within the user's location may also be determined... ***In some implementations, imaging devices located within the materials handling facility may be used to capture images within the materials handling facility that are processed by the computing resource(s) 203 to identify the location of the user***."

**ANSWER:** Hudson admits that Plaintiff is citing to and quoting from a patent application that was filed by a non-defendant, but denies any express or implied relevance of the cited patent application to the current case. To the extent a further response is required, Hudson denies the remaining allegations of Paragraph 30.

**Microphones, Collection of Voice Prints, Shopper Identification**

31.     "Likewise, ***microphones may record sounds made by the user and the computing resource (s) may process those sounds to determine a location of the user***. For example, based on knowledge of the locations of the microphones within the materials handling facility, a time offset between audio signals received by each microphone can be computed to determine a location of the user. To identify the time offsets between signals received by various microphones, in some instances, the computing resource(s) 203 compile each audio signal received by respective audio transducers and then determine the time offsets between the signals by, for instance, using any time difference–of–arrival ("TDOA") technique, or any other suitable technique. After identifying the respective time offsets, the computing resource(s) 203 can determine the direction and/ or source location of the audio. In addition to, or as an alternative to visual and/or audio location determination, the inventory management system 150 may also utilize other techniques, such as triangulation between antennas 216, to determine the location of the user as the user moves through the materials handling facility."

**ANSWER:** Hudson admits that Plaintiff is citing to and quoting from a patent application

that was filed by a non-defendant, but denies any express or implied relevance of the cited patent

application to the current case. To the extent a further response is required, Hudson denies the

remaining allegations of Paragraph 31.

**Cameras, Hand Geometry, Shopper, and Item Identification**

32.     "***[W]hen the user reaches an inventory location and passes their hand into an inventory location within storage area 130, one or more images may be captured of the user's hand prior to it passing into the inventory location.*** Again, when the user's hand is removed from the inventory location, one or more images may be captured of the user's hand as it exits the inventory location. Those images may be compared to determine whether a user has picked an item from the inventory location or placed an item in the inventory location. In some simple mentions, a simple image analysis may be performed to determine changes between the images. ***For example, image analysis may be performed on the first image to determine a skin tone color of the user's hand and pixels including that color, or a range of colors similar to the identified skin tone color, may be identified to represent the users hand.***"

**ANSWER:** Hudson admits that Plaintiff is citing to and quoting from a patent application

that was filed by a non-defendant, but denies any express or implied relevance of the cited patent

application to the current case. To the extent a further response is required, Hudson denies the

remaining allegations of Paragraph 32.

33.     "***Utilizing the skin tone colors, the images of the users hand obtained after the user's hand is removed from the inventory location may be processed to again identify the users***

*hand.* Finally, a comparison of the segments of the images representing the users hand and an area surrounding the users hand may be compared to determine a change between the images to identify whether an item has been picked or placed into the inventory location."

**ANSWER:** Hudson admits that Plaintiff is citing to and quoting from a patent application that was filed by a non-defendant, but denies any express or implied relevance of the cited patent application to the current case. To the extent a further response is required, Hudson denies the remaining allegations of Paragraph 33.

34.     "In another example, item recognition may be performed on both images to identify different items. For example, the image(s) captured prior to the users hand entering the inventory location may only include an item that is in the shape of a hand. In comparison, the image(s) captured after the user's hand is removed from the inventory location may include an object in the shape of the user's hand plus an additional item. It will be appreciated that any image analysis and/or comparison technique may be used to determine if a user has placed and/or picked an item from an inventory location."

**ANSWER:** Hudson admits that Plaintiff is citing to and quoting from a patent application that was filed by a non-defendant, but denies any express or implied relevance of the cited patent application to the current case. To the extent a further response is required, Hudson denies the remaining allegations of Paragraph 34.

**Checking Out**

35.     "[R]ather than the user having to stop and "check out" with a cashier, teller, or automated check station because the picked items are already known and identified on an item identifier list associated with the user, the user may simply exit the retail location with the items. The exit of the user will be detected and, as the user passes through the exit (transition area), the user, without having to stop or otherwise be delayed, will automatically be charged a fee for the items (the items are transitioned to the user)."

**ANSWER:** Hudson admits that Plaintiff is citing to and quoting from a patent application that was filed by a non-defendant, but denies any express or implied relevance of the cited patent application to the current case. To the extent a further response is required, Hudson denies the remaining allegations of Paragraph 35.

**Hudson's Use of JWO Hardware & Technology Is Pervasive in Illinois**

36.     Employing JWO technology as described above, Hudson collects the biometric data of thousands of other Illinois citizens and residents of other states visiting its two high-traffic airport stores in Illinois.

**ANSWER:** Hudson denies the allegations of Paragraph 36.

37.     Hudson employs JWO technology at their Chicago O'Hare International Airport "Nonstop" store. At times during the Class Period, a since-closed Hudson Nonstop in Chicago Midway International Airport also employed JWO technology.

**ANSWER:** Hudson admits that both stores identified in the cited articles, a Hudson Nonstop store located at Chicago O'Hare International Airport and a Hudson Nonstop store that was located at Chicago Midway International Airport, utilized Amazon's JWO technology.

**B.  Hudson Fails to Give Illinois Citizens Written Disclosures and Obtain Written Informed Consent Before Collecting Their Biometric Information and Identifiers.**

38.     The core function of JWO technology is the collection and use of shoppers' biometric data to create a "seamless" shopping experience. However, when shoppers enter Hudson Nonstop JWO stores, there are no posted written notices inside or outside the store about the collection of biometric data. Similarly, when prompted to scan a code generated from an App on their mobile phone before entering the store (or scan a credit card) Hudson provided Plaintiff with no written disclosures about the collection of her biometric data, nor prompted Plaintiff for her consent to its collection, usage, storage, and dissemination.

**ANSWER:** Hudson lacks knowledge or information sufficient to form a belief about the allegations of Paragraph 38 as to Plaintiff's experiences and on that basis denies them. Hudson denies the remaining allegations of Paragraph 38.

39.     Plaintiff's experience is representative of Hudson customers' experience generally, regardless of which JWO-equipped store they entered, be it the Hudson Nonstop in Chicago O'Hare International Airport or Chicago Midway International Airport.

**ANSWER:** Hudson lacks knowledge or information sufficient to form a belief about the allegations of Paragraph 39 as to Plaintiff's experiences and on that basis denies them. To the extent a further response is required, Hudson denies the remaining allegations of Paragraph 39.

40.     As chronicled in various media outlets, the JWO shopping experience can be completed in as little as "8 seconds." JWO shopping be completed in mere seconds only because

Hudson does not provide shoppers with written disclosures about the collection, use, storage, and dissemination of their biometric data, nor allow them adequate time to review them before obtaining informed written consent.

**ANSWER:** Hudson admits that Just Walk Out technology allows travelers to quickly enter a Hudson Nonstop store and make their desired purchases. Hudson denies the remaining allegations of Paragraph 40.

### C. Hudson Discloses and Rediscloses Biometric Data to Third Parties Without Their Written Informed Consent.

41.     In its operation of JWO technology, Hudson regularly discloses and rediscloses the biometric data of shoppers from cameras, computers, and servers in the JWO store itself, i.e., inside a Hudson Nonstop, through the internet, and to computers and servers external to the store, like servers at AWS and Amazon, or other third-party cloud platforms, whose employees may also have access to the data.

**ANSWER:** Hudson denies the allegations of Paragraph 41.

42.     Amazon explains this JWO process, using **Fig. 2**, as a reference in its patent. "As illustrated [in **Fig. 2**], *the computing resource(s) 203 may be remote from the environment* and implemented as one or more servers 203(1), 203(2), . . ., 203(P) and may, in some instances, form a portion of a network-accessible computing platform implemented as a computing infrastructure of processors, storage, software, data access, and so forth that is maintained and accessible by components/devices of the inventory management system 150 via a network 302, such as the internet. For example, the computing resources 203 may process images to determine whether an item has been picked from an inventory location or placed into an inventory location. *The computing resource(s) 203 do not require end-user knowledge of the physical location and configuration of the system that delivers the services. Common expressions associated for these remote computing resource(s) 203 include 'on-demand computing,' 'software as a service (SaaS),' 'platform computing,' 'network-accessible platform,' 'cloud services,' 'data centers,' and so forth.* Each of the servers 203(1)-(P) include a processor 317 and memory 319, which may store or other injure wise have access to an inventory management system 150, which may include or provide image processing (e.g., for user identification and/or item identification), inventory tracking, and/or location determination."

**ANSWER:** Hudson admits that Plaintiff is citing to and quoting from a patent application that was filed by a non-defendant, but denies any express or implied relevance of the cited patent application to the current case. To the extent a further response is required, Hudson denies the remaining allegations of Paragraph 42.

**D. Hudson Fails to Provide a Publicly Available, BIPA-compliant Retention Policy.**

43.     Hudson is wholly owned by Dufry, operating as a Delaware corporation. It is therefore a private entity under BIPA, thus, if it collects biometric information in the course of its business, Hudson is required to establish a publicly available retention and deletion schedule. However, despite collecting biometric data, Hudson does not provide a JWO specific retention and deletion policy on the Hudson website, its mobile applications, or anywhere within its stores where JWO technology is in use.

**ANSWER:** Hudson admits that Hudson Group (HG) Retail, LLC is a limited liability company, whose sole member is Hudson Group (HG) Inc. Hudson admits that the sole shareholder of Hudson Group (HG) Inc. is Dufry Americas Holding, Inc. Hudson admits that Dufry America, LLC is a Delaware limited liability company whose sole member is Dufry South Florida, Inc. Hudson denies collecting biometric data through Amazon's Just Walk Out technology. The remainder of Paragraph 43 consists of conclusions of law to which no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 43.

**E. Hudson Profits From its Use of Citizens' Biometric Information.**

44.     Hudson Nonstop advertises to potential customers that its JWO technology offers a futuristic and efficient shopping experience.37 But JWO technology is much more: it is a sophisticated system that captures a customer's most personal biometric data, associates that data with purchasing behavior, and integrates that information into its vast retail and marketing network. JWO technology enables Hudson with an advanced solution for instore management with minimal human labor costs. Inherently, by using JWO in its stores, Hudson is profiting from the collection, use, storage, and dissemination of every JWO shopper's biometric data.

**ANSWER:** Hudson admits that Plaintiff is citing to the Chicago O'Hare International Airport's Website, which speaks for itself. The remaining parts of Paragraph 44 consist of conclusions of law to which no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 44.

## V.     CLASS ACTION ALLEGATIONS

45.     Plaintiff Carleen Coulter brings this action on behalf of herself and under 735 ILCS 5/2-801 as a representative of a Class defined as follows:

All persons who entered Hudson Nonstop Stores in Chicago O'Hare International Airport and Chicago Midway International Airport that were equipped with Just Walk Out technology during the relevant Class Period.

**ANSWER:** Paragraph 45 describes the nature of Plaintiff's claims to relief and no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 45.

46. For purposes of this action, the Class Period is defined as September 20, 2018, through the present, to the date of trial.

**ANSWER:** Paragraph 46 describes the nature of Plaintiff's claims to relief and no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 46.

47. Excluded from the Class are Hudson, Dufry, and any entity in which Defendants Hudson's, and Dufry's legal representatives, officers, directors, assignees, and successors.

**ANSWER:** Paragraph 47 describes the nature of Plaintiff's claims to relief and no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 47.

48. Members of the Class are so numerous that joinder of all Class Members is impractical. Hudson currently operates one, and at times relevant to the Class Period, two JWO retailers operated in the City of Chicago, Illinois, in high-traffic airport locations.

**ANSWER:** Paragraph 48 describes the nature of Plaintiff's claims to relief and no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 48.

49. Plaintiff's claims are typical of the members of Class Members who were aggrieved by the same wrongful conduct of Hudson: their substantive privacy interests were harmed (i) by Hudson obtaining their biometric identifiers or information without first providing adequate written notice and their informed written consent, (ii) by Hudson disclosing, redisclosing, or otherwise disseminating their biometric identifiers or information to third parties without obtaining proper consent, (iii) by Hudson failing to establish an adequate publicly available policy regarding the retention of Plaintiff's and Class Members' biometric data, and (iv) by Hudson profiting from their biometric identifiers or information.

**ANSWER:** Paragraph 49 describes the nature of Plaintiff's claims to relief and no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 49.

50.     The Plaintiff will fairly and adequately protect and represent the interests of the Class. The interests of Plaintiff are coincident with, and not antagonistic to, those of the other members of the Class.

**ANSWER:** Paragraph 50 describes the nature of Plaintiff's claims to relief and no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 50.

51.     The Plaintiff is represented by counsel with experience in the prosecution of complex Class actions and with particular experience with Class actions raising claims under BIPA.

**ANSWER:** Paragraph 51 describes the nature of Plaintiff's claims to relief and no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 51.

52.     Questions of law and fact common to the members of the Class predominate over questions that may affect only individual Class Members because Hudson has acted on grounds generally applicable to the entire Class, thereby making damages concerning the Class as a whole appropriate. Such generally applicable conduct is inherent in Hudson's wrongful actions.

**ANSWER:** Paragraph 52 describes the nature of Plaintiff's claims to relief and no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 52.

53.     Questions of law and fact common to the Class include:

(a)     Whether Hudson established a publicly available policy for retention of biometric data sufficient to satisfy the requirements of § 15(a) of BIPA;

(b)     Whether Hudson provided written notice and obtained the written consent of persons whose biometric data were collected by its JWO hardware, and, if so, whether such notice and consent are sufficient to satisfy the requirements of § 15(b) of BIPA;

(c)     Whether Hudson profited from the use of the biometric data it collected via JWO hardware to improve the JWO software itself uses, profits from, and also sells for profit to other businesses, contrary to § 15(c);

(d)     Whether Hudson obtained requisite consent before disclosing, redisclosing, or otherwise disseminating biometric identifiers or biometric information to a third party to satisfy the requirements of § 15(d);

(e)     Whether persons who had their biometric data captured by Hudson are entitled to damages, and, if so, in what amount;

(f)     Whether Hudson should be enjoined from collecting biometric data illegally through JWO hardware and using them in JWO software.

**ANSWER:** Paragraph 53 describes the nature of Plaintiff's claims to relief and no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 53.

54.     A Class action is a superior method for the fair and efficient adjudication of the controversy. A Class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual Class actions would engender. The benefits of proceeding through the Class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweigh the potential difficulties in the management of this Class action.

**ANSWER:** Paragraph 54 describes the nature of Plaintiff's claims to relief and no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 54.

55.     Plaintiff knows of no special difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a Class action.

**ANSWER:** Paragraph 55 describes the nature of Plaintiff's claims to relief and no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 55.

## VI.    CLAIMS FOR RELIEF

### A.  Claim 1: Violation of Section 15(a) of Illinois's BIPA (740 ILCS 14/15(a)) by Failing to Establish a Publicly Available Policy Governing the Retention of Biometric Data.

56.    Plaintiff repeats and incorporates by reference all preceding paragraphs and allegations.

**ANSWER:** In response to Paragraph 56, Hudson incorporates by reference and reasserts each and every response to Paragraphs 1 through 55.

57.    Section 15(a) of BIPA provides that "[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information . . . ." The biometric data must be permanently destroyed "when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first."

**ANSWER:** Hudson admits that Plaintiff cites to and quotes from BIPA. To the extent any implication as to the relevance of BIPA to the current action is being implied, Hudson denies that BIPA is applicable to the current action. To the extent a further response is required, Hudson denies the allegations of Paragraph 57.

58.    Hudson operates as a wholly owned subsidiary of a Delaware corporation and is therefore a private entity under BIPA.

**ANSWER:** Hudson admits that Hudson Group (HG) Retail, LLC is a Delaware limited liability company, whose sole member is Hudson Group (HG) Inc, a Delaware corporation. Hudson admits that the sole shareholder of Hudson Group (HG) Inc. is Dufry Americas Holding, Inc. Hudson admits that Dufry America, LLC is a Delaware limited liability company whose sole member is Dufry South Florida, Inc, a Delaware corporation. Hudson denies collecting biometric data through Amazon's Just Walk Out technology. The remainder of Paragraph 58 consists of conclusions of law to which no response is necessary or appropriate.

59.    The facial geometry, hand geometry, and voice print of Plaintiff and Class Members are biometric identifiers under the Act, and the information that Hudson derived from these identifiers is biometric information covered by the Act.

**ANSWER:** Paragraph 59 consists of conclusions of law to which no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 59.

60.     As explained in Paragraph 43 above, Hudson did not properly develop a publicly available written policy governing the retention of biometric data.

**ANSWER:** Paragraph 60 consists of conclusions of law to which no response is necessary or appropriate. To the extent a response is required, Hudson denies collecting biometric data and denies the remaining allegations of Paragraph 60.

61.     By improperly retaining the biometric information of Plaintiff and Class Members, Hudson violated the very privacy interests that BIPA was intended to protect.

**ANSWER:** Paragraph 61 consists of conclusions of law to which no response is necessary or appropriate. To the extent a response is required, Hudson denies collecting biometric data and denies the remaining allegations of Paragraph 61.

62.     On behalf of herself and the Class, Plaintiff seeks:

    (a)    injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Hudson to develop and make publicly available a retention policy that complies with BIPA's § 15(a);

    (b)    the greater of liquidated damages of $5,000 or actual damages for each of Hudson's intentional or reckless violations of § 15(a);

    (c)    the greater of liquidated damages of $1,000 or actual damages for each of Hudson's negligent violations of § 15(a); and, reasonable attorneys' fees and costs and other litigation expenses.

**ANSWER:** Paragraph 62 describes the nature of Plaintiff's claims to relief and no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 62.

**B. Claim 2: Violation of Section 15(b) of Illinois's Biometric Information Privacy Act (740 ILCS 14/15(b)) by Obtaining Biometric Identifiers or Biometric Information Without Written Informed Consent.**

63.     Plaintiff repeats and incorporates by reference all preceding paragraphs and allegations.

**ANSWER:** In response to Paragraph 63, Hudson incorporates by reference and reasserts each and every response to Paragraphs 1 through 62.

64.     Section 15(b) of BIPA makes it unlawful for any private entity to:

> collect, capture, purchase, receive through trade, or otherwise obtain a person's. . . biometric identifier or biometric information, unless it first: (1) informs the subject. . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject. .. in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . .

**ANSWER:** Hudson admits that Plaintiff cites to and quotes from BIPA. To the extent any implication as to the relevance of BIPA to the current action is being implied, Hudson denies that BIPA is applicable to the current action. To the extent a further response is required, Hudson denies the allegations of Paragraph 64.

65.     The written release required by § 15(b)(3) means "informed written consent."

**ANSWER:** Hudson admits that Plaintiff cites to and quotes from BIPA. To the extent any implication as to the relevance of BIPA to the current action is being implied, Hudson denies that BIPA is applicable to the current action. To the extent a further response is required, Hudson denies the allegations of Paragraph 65.

66.     As detailed in Paragraphs 22–40 above, Hudson systematically collected, stored, and used Plaintiff's and Class Members' biometric data without providing the notice required by § 15(b)—including notice that their biometric data was being used for the specific purpose of identifying them, tracking them, and tying their data to their purchases for payment and that it would be disseminated to third parties.

**ANSWER:** Hudson denies the allegations of Paragraph 66.

67. Likewise, Hudson never obtained from Plaintiff nor Class Members the informed written consent required by BIPA.

**ANSWER:** Paragraph 67 consists of conclusions of law to which no response is necessary or appropriate. To the extent a response is required, Hudson denies collecting biometric data and denies the remaining allegations of Paragraph 67.

68. By improperly collecting, storing, and using Plaintiff's and Class Members' biometric data, Hudson violated their rights to privacy in their biometric data.

**ANSWER:** Paragraph 68 consists of conclusions of law to which no response is necessary or appropriate. To the extent a response is required, Hudson denies collecting biometric data and denies the remaining allegations of Paragraph 68.

69. On behalf of herself and the Class, Plaintiff seeks:

(a) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Hudson to comply with § 15(b)'s requirement for collecting, storing, and using biometric data;

(b) the greater of liquidated damages of $5,000 or actual damages for each of Hudson's intentional or reckless violations of § 15(b);

(c) the greater of liquidated damages of $1,000 or actual damages for each of Hudson's negligent violations of § 15(b); and,

(d) reasonable attorneys' fees and costs and other litigation expenses.

**ANSWER:** Paragraph 69 describes the nature of Plaintiff's claims to relief and no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 69.

**C. Claim 3: Violation of Section 15(c) of Illinois's Biometric Information Privacy Act (740 ILCS 14/15(c)) by Profiting from Biometric Identifiers or Biometric Information Obtained Through JWO.**[1]

70.     Plaintiff repeats and incorporates by reference all preceding paragraphs and allegations.

**ANSWER:** In response to Paragraph 70, Hudson incorporates by reference and reasserts each and every response to Paragraphs 1 through 69.

71.     Section 15(c) of BIPA makes it unlawful for any "private entity in possession of a biometric identifier or biometric information" to "sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information."

**ANSWER**: Hudson admits that Plaintiff cites to and quotes from BIPA. To the extent any implication as to the relevance of BIPA to the current action is being implied, Hudson denies that BIPA is applicable to the current action. To the extent a further response is required, Hudson denies the allegations of Paragraph 71.

72.     As detailed in Paragraph 44 above, Hudson had possession of the Plaintiff's and Class Members' biometric data and, without informing them, profited from their biometric data by using that biometric data to effectuate purchases and reduce labor costs.

**ANSWER:** Paragraph 72 consists of conclusions of law to which no response is necessary or appropriate. To the extent a response is required, Hudson denies collecting biometric data and denies the remaining allegations of Paragraph 72.

73.     By profiting from its undisclosed use of Plaintiff's and Class Members' biometric data, Hudson violated the substantive privacy interests that BIPA protects.

**ANSWER:** Paragraph 73 consists of conclusions of law to which no response is necessary or appropriate. To the extent a response is required, Hudson denies collecting biometric data and denies the remaining allegations of Paragraph 73.

---

[1] The Court, in its oral ruling (*see* Dkt 36), indicated that it granted Defendants' motion to dismiss as to this claim, and will determine the proper course of action for this claim when it receives the joint status report that includes a discovery plan, to be filed by December 20, 2024.

74.     On behalf of herself and the Class, Plaintiff seeks:

    (a)     injunctive and equitable relief as is necessary to protect the interests of the Plaintiff and the Class by requiring Hudson to cease profiting from the use of their biometric data;

    (b)     the greater of liquidated damages of $5,000 or actual damages for each of Hudson's intentional or reckless violations of § 15(c);

    (c)     the greater of liquidated damages of $1,000 or actual damages for each of Hudson's negligent violations of § 15(c); and,

    (d)     reasonable attorneys' fees and costs and other litigation expenses.

**ANSWER:** Paragraph 74 describes the nature of Plaintiff's claims to relief and no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 74.

### D.  Claim 4: Violation of Section 15(d) of Illinois's Biometric Information Privacy Act (740 ILCS 14/15(d)) by Disclosing Biometric Identifiers or Biometric Information Obtained Through JWO Without Written Informed Consent.

75.     Plaintiff repeats and incorporates by reference all preceding paragraphs and allegations.

**ANSWER:** In response to Paragraph 75, Hudson incorporates by reference and reasserts each and every response to Paragraphs 1 through 74.

76.     Section 15(d) of BIPA makes it unlawful to:

Disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless: (1) the subject. . . consents to the disclosure or redisclosure. . . (4) the disclosure is issued under a valid warrant or subpoena issued by a Court of competent jurisdiction.

**ANSWER:** Hudson admits that Plaintiff cites to and quotes from BIPA. To the extent any implication as to the relevance of BIPA to the current action is being implied, Hudson denies that BIPA is applicable to the current action. To the extent a further response is required, Hudson denies the allegations of Paragraph 76.

77.     As explained in detail in Paragraphs 41-42, Hudson regularly discloses and rediscloses JWO store shoppers' biometric data, from the individual Hudson stores' cameras, sensors, and servers to outside AWS servers, Amazon servers, third-party web services, and their employees.

**ANSWER:** Hudson denies the allegations of Paragraph 77.

78.     By sharing the Plaintiff's biometric data, Hudson violated the substantive privacy interests that BIPA protects.

**ANSWER:** Paragraph 78 consists of conclusions of law to which no response is necessary or appropriate. To the extent a response is required, Hudson denies collecting biometric data and denies the remaining allegations of Paragraph 78.

79.     On behalf of herself and the Class, Plaintiff seeks:

(a)     injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Hudson to cease disclosing and redisclose their biometric data without consent;

(b)     the greater of liquidated damages of $5,000 or actual damages for each of Hudson's intentional or reckless violations of § 15(d);

(c)     the greater of liquidated damages of $1,000 or actual damages for each of Hudson's negligent violations of § 15(d); and,

(d)     reasonable attorneys' fees and costs and other litigation expenses.

**ANSWER:** Paragraph 79 describes the nature of Plaintiff's claims to relief and no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 79.

## VII.     PRAYER FOR RELIEF

80.     Wherefore, on behalf of herself and the Class, Plaintiff respectfully requests that this Court enter an Order:

(a)     Certifying this case as a Class action under 735 ILCS 5/2-801 on behalf of the Class defined above, appointing Plaintiff Carleen Coulter as representative of the Class, and appointing her counsel as Class Counsel;

(b)     Declaring that Hudson's actions, as set out above, violate § 15(a), (b), (c), and (d) of BIPA;

(c)   Awarding the greater of actual damages or statutory damages of $5,000 per intentional or reckless violation of BIPA, and the greater of actual or statutory damages of $1,000 per negligent violation of BIPA;

(d)   Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, among other things, an Order requiring Hudson to collect, store, and use biometric identifiers in compliance with BIPA;

(e)   Awarding Plaintiff and the Class their reasonable litigation expenses and attorney's fees;

(f)   Awarding Plaintiff and the Class pre-and post-judgment interest, to the extent allowable; and

(g)   Awarding such other and further relief as equity and justice may require.

**ANSWER:** Paragraph 80 describes the nature of Plaintiff's prayer for relief and no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 80.

## VIII.   JURY DEMAND

81.   Plaintiff and Class Members demand a trial by jury on all issues so triable.

**ANSWER:** Paragraph 81 describes the nature of Plaintiff's claims to relief and no response is necessary or appropriate. To the extent a response is required, Hudson denies the allegations of Paragraph 81.

## **AFFIRMATIVE DEFENSES**

Hudson sets forth below its affirmative defenses. By setting forth these defenses, Hudson does not assume any burden of proof as to any fact issue or other element of any cause of action that properly belongs to Plaintiffs. Hudson reserves the right to amend or supplement its defenses.

1.   ***Laches***. Plaintiff has unreasonably delayed in asserting her rights.

2.      ***Waiver and acquiescence***. Plaintiff has waived her right to assert the claims-at-issue because she acquiesced to Hudson's practices-at-issue and failed to promptly assert her rights otherwise.

3.      ***Provided notice***. Plaintiff was provided notice and provided her consent to allow Defendant to collect, capture, purchase, receive through trade, otherwise obtain, or disseminate biometric identifiers or biometric information.

4.      ***Consent***. Plaintiff consented to Hudson's practices and thus cannot succeed on their claims.

5.      ***Estoppel***. Plaintiff's claims are barred, in whole or in part, by estoppel because, for example, Plaintiff agreed and/or did not object to the complained-of practices at issue.

6.      ***Preclusion***. The asserted unjust enrichment claim is precluded by an enforceable contract covering the subject matter at issue.

7.      ***Standing***. Plaintiff lacks standing on all her claims because Plaintiff consented to the use of Amazon's technology as utilized by Hudson including through valid contracts between Plaintiff, on the one hand, and Hudson, on the other.

8.      ***Failure to mitigate***. Plaintiff's claims fail in whole or in part because she has failed to mitigate her alleged damages.

9.      ***Void for vagueness***. As applied to JWO Technology, BIPA is unconstitutionally vague.

10.     ***Unconstitutional as applied***. BIPA is unconstitutional as applied to the JWO Technology for lack of fair notice and inviting arbitrary enforcement.

11.     ***Due process***. The prayer for relief is barred in whole or in part because Plaintiff and the putative class members are not entitled to recover statutory liquidated damages. Any such

recovery would not be a reasonable estimate of actual damages, as Hudson does not benefit from the transaction of biometric data, but instead would amount to a penalty akin to punitive damages that are disallowed under state and federal law, including as a violation of Hudson's due process rights.

12. ***No basis to proceed as a class***. No Plaintiff can represent a class for the purposes of the claims at issue, including for lack of an adequate class definition, ascertainability, numerosity, commonality, typicality, adequacy, and the risk of inconsistent judgments.

13. ***BIPA is not applicable***. The claims of Plaintiff and the putative class are not covered by BIPA because Hudson did not collect, capture, purchase, receive through trade, otherwise obtain, or disseminate biometric identifiers or biometric information of Plaintiff and the putative class.

14. ***Section 25(e) of BIPA.*** Hudson is exempt under the Section 25 of BIPA because nothing in BIPA shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government.

15. ***Failure to State a Claim.*** Plaintiff's claims are barred for failure to state a claim against Hudson.

16. ***Failure to Join Necessary or Indispensable Party.*** Plaintiff's claims are barred for failure to join a necessary or indispensable party.

Dated: December 6, 2024

Respectfully submitted,

By: _____

Moez M. Kaba
HUESTON HENNIGAN LLP

Moez M. Kaba (admitted pro hac vice)
Sourabh Mishra (admitted pro hac vice)
**Hueston Hennigan LLP**
620 Newport Center Drive
Newport Beach, CA 92660
Tel: (949) 356-5536
Fax: (888) 775-0898
Email: smishra@hueston.com

Kathleen A. Stetsko
**Perkins Coie LLP**
110 N Upper Wacker Dr Suite 3400,
Chicago, IL 60606
Telephone: 312.324.8400
Fax: 312.324.9400
Email: KStetsko@perkinscoie.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Moez M. Kaba, hereby certify that on December 6, 2024, I electronically filed the Defendants' Answer to Plaintiffs' Class Action Complaint with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

**HUESTON HENNIGAN, LLP**
523 West 6th Street, Unit 400
Los Angeles, CA 90014

- 30 -